# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| FREDERICK P. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13CV140 CDP |
| | ) | |
| THOMAS COLLINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff (registration no. 500842), an inmate at Eastern Reception, Diagnostic and Correctional Center ("ERDCC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $38.02. See 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the amended complaint, the Court finds that the amended complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must

assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. Id.

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $190.12, and an average monthly balance of $51.16. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $38.02, which is 20 percent of plaintiff's average monthly deposit.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or

fact." Neitzke v. Williams, 490 U.S. 319, 328 (1989). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. Spencer v. Rhodes, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), aff'd 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Id. at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. Id. at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." Id. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. Id. at 1950, 51-52.

**The Amended Complaint**

Plaintiff, an inmate at ERDCC, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights during his incarceration at Potosi Correctional Center ("PCC"). Named as defendants are the following employees of PCC: Thomas Collins (Caseworker); Daniel Blair (Lieutenant); William Kitchell (Sergeant); Shane Pashia (Correctional Officer); and Dan Bryan (Functional Unit Manager).

Plaintiff asserts that in March of 2012 his due process rights were violated during his incarceration at PCC when he was issued a conduct violation after a search of his possessions and person. He claims that he was at recreation in the yard and defendant Pashia searched his property.[1] Plaintiff claims that he was holding a file folder full of legal materials and that the folder also contained a book of stamps that he intended to use to mail his legal materials. The stamps were identified as "contraband" by defendant Blair, who plaintiff states was standing nearby, and plaintiff was directed to report to an area in the game room to await a determination as to discipline.

Defendant Collins, a caseworker, appeared in the game room to review the contraband found on plaintiff, as well as all of the other offenders from Housing Unit

---

[1] Plaintiff alleges that defendant Kitchell searched his person but did not find any additional contraband.

#3.[1] During an interview in the game room, plaintiff asserted that he should be allowed to have the stamps because he was going to weigh his legal materials in the library and then place them in the mail. He argued that he would not have the opportunity to return to his housing unit prior to going to the law library to weigh his legal materials so he should be allowed to have the stamps during recreation.

Plaintiff claims that he was told that he was not supposed to have stamps in the recreation area. Plaintiff alleges that defendant Blair stated that the stamps would be sent to the property room to be disposed of, his recreation would be canceled (he would lose his law library time) and he would have to return to his housing unit. In his amended complaint, plaintiff claims that "defendant Pashia issued Davis a conduct violation upon the orders of defendant Collins." However, in his prior pleading, plaintiff stated that defendant Blair made a decision that he would receive a conduct violation, again labeling the stamps "contraband."[2]

Plaintiff states that later that afternoon defendant Kitchell read him a conduct violation for Rule 20.1 - Failing to Comply With a Written or Verbal Order or

---

[1]Plaintiff states that he believes defendant Collins was acting as a Functional Unit Manager at this time in place of defendant Bryan.

[2]Plaintiff makes much of who sent the stamps to the property room for disposal and when exactly they were sent. The Court sees no relevance in these details as it appears that even according to plaintiff's arguments the stamps were sent to the property room for disposal after they were labeled "contraband."

Instruction of Any Employee. Plaintiff asserts that the conduct violation was actually written by defendant Pashia and "falsely represented the facts regarding the incident."

Plaintiff states that approximately three days after the incident defendant Collins functioned as his disciplinary hearing officer. Defendant Collins found him guilty of the same conduct violation issued to him by defendant Pashia. Three days later defendant Bryan, the Functional Unit Manager, modified plaintiff's conduct violation from a Rule 20.1 conduct violation to a Rule 24.1 - Possession of Contraband - and his sanction to a five day activity restriction. Plaintiff grieved the conduct violation through every step of the institutional grievance procedures.[3]

In the Warden's Response to plaintiff's grievance appeal, as well as the Appeal Response from Dwayne Kemper, the Missouri Department of Corrections Deputy Division Director of the Division of Adult Institutions, plaintiff was advised that stamps were considered contraband when found in the recreation area because they are utilized as a form of currency in the institutional setting. Plaintiff was additionally informed that although he maintained that he was going to weigh and mail his legal materials from the library, he was fully aware that "items of mail are to

---

[3]Plaintiff has attached copies of his Informal Resolution Requests, Disciplinary Action Reports, Grievances, Grievance Appeals, and Grievance Responses to the body of his complaint and amended complaint. The Court takes judicial notice of these documents pursuant to Fed.R.Civ.P. 10.

be weighed and taken back to the housing unit to affix postage and mail items out of the institution."

Plaintiff brings this action against defendants in their individual and official capacities and he seeks declaratory and injunctive relief. Specifically, plaintiff seeks to be exonerated by surveillance videotape evidence on a false minor conduct violation.[2]

**Discussion**

A plaintiff challenging a disciplinary hearing must show that the punishment intrudes on a protected liberty interest "so as to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that the state-created right is not arbitrarily abrogated." Madison v. Parker, 104 F.3d 765, 768 (5th Cir.1997) (citing Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). The Supreme Court has explained that many of the restraints of prison life do not violate the Constitution:

> [T]hese [liberty] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

---

[2] Plaintiff has been told that security camera videos are not used when determining the outcome of minor violations, although the tapes are maintained in accordance with Missouri Department of Corrections policy.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (citations omitted). The Fifth Circuit has further explained that "these interests are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." Madison, 104 F.3d at 767; see, e.g., Sandin, 515 U.S. at 485-86 (no atypical and significant hardship where inmate spent thirty days in solitary confinement); Hemphill v. Delo, 124 F.3d 208 (8th Cir.1997) (same; four days locked in housing unit, thirty days in disciplinary segregation, and approximately 290 days in administrative segregation); Freitas v. Ault, 109 F.3d 1335, 1337–38 (8th Cir.1997)(same; ten days administrative segregation and thirty days on "on-call" status, as well as loss of higher paying job and numerous privileges); Wycoff v. Nichols, 94 F.3d 1187, 1190 (8th Cir.1996)(same; ten days disciplinary detention and 100 days in maximum-security cell).

Plaintiff challenges his disciplinary proceeding based on his inability to review the videotape of the search of his property and person and his loss of recreation time. Under the standards set forth in Sandin, the loss of recreation time cannot be said to be atypical, significant deprivations that could encroach upon any liberty interest. Sandin, 515 U.S. at 485-86. See also, Madison, 104 F.3d at 768 ("[petitioner's] 30 day commissary and cell restrictions ... do not represent the type of atypical,

significant deprivations in which a state might create a liberty interest"); Lewis v. Dretke, 54 F. App'x 795, 2002 WL 31845293, at *1 (5th Cir. Dec.11, 2002) (per curiam) (unpublished) (loss of telephone privileges does not implicate due process); Palmisano v. Bureau of Prisons, 258 F. App'x 646, 647-48 (5th Cir.2007) (per curiam) (unpublished) (loss of telephone privileges did not establish "a claim of the denial of constitutional rights").

Additionally, although plaintiff makes several conclusory allegations of a "conspiracy" in this case, he has failed to meet the criteria enunciated under § 1983. For example, plaintiff argues that there were "mistakes" on the written report as to who performed the body search and which officer actually found the stamps and that these "mistakes" are indicators of a vast conspiracy. To properly plead a claim for civil conspiracy under § 1983, a plaintiff must include factual allegations showing a "meeting of the minds" concerning unconstitutional conduct; although an express agreement between the purported conspirators need not be alleged, there must be something more than the summary allegation of a conspiracy. See Mershon v. Beasely, 994 F.2d 449, 451 (8th Cir. 1993). His broad allegations of "mistakes" on a written report are simply not enough to allege a conspiracy broad enough to show a due process violation.

In his amended complaint, plaintiff asserts that names were switched on the report to protect defendant Kitchell of "any violation of clearly established policy which prohibits the interviewing employee from having any involvement in any manner, with incident." The Court finds no relevance in this allegation with relation to plaintiff's due process claim. A federal court's inquiry is not whether prison regulation was violated but whether the Constitution was violated. <u>Griffin-Bey v. Bowersox</u>, 978 F.2d 455, 457 (8th Cir. 1992) (per curiam). Moreover, plaintiff's own recitation of events and his IRRs, Grievances, and Grievance Responses attached to his complaint and amended complaint show that none of the officers involved in confiscating the stamps were involved in interviewing plaintiff regarding the violation. Plaintiff asserts that defendant Pashia found the stamps in his belongings while defendant Kitchell searched his person. He then states that defendant Kitchell interviewed him regarding the incident. Thus, there is no indication, even from plaintiff's own timeline of events, that a charging officer sat in judgment in his own complaint on a disciplinary proceeding. Even if there were, there is no prohibition on an interviewer or hearing officer from reviewing information concerning an event or prohibiting them from completing their duties within an area wherein they are searching other offenders or reviewing other items found by staff during a search.

Moreover, the Court notes that construed liberally, plaintiff's amended complaint appears to be nothing more than an appeal from the disciplinary committee's findings. He quibbles with the way the conduct violation was written and he states that he dislikes the prison rule that video evidence can only be used in major violations like excessive force. As noted above, this Court cannot review the process plaintiff received unless he first shows that he was deprived of a liberty interest. Sandin, 515 U.S. at 485-86. Plaintiff has failed to show such a deprivation in this instance.

Plaintiff next argues that his access to Courts was obstructed when his postage stamps were confiscated in March of 2012. He asserts that he had money set aside for "photocopying and research material. . .that had to be diverted to purchase more postage to replace the stamps confiscated on March 19, 2012." He claims that the five-day cell restriction and the delay in purchasing more postage and copying legal materials led to his "official capacity" claims being dismissed from his amended complaint in a case he had ongoing in this Court at that time, see Davis v. Webb, 4:11CV1906 JAR (E.D. Mo.).

In order to allege an access-to-courts claim, a plaintiff must allege that he has suffered "actual prejudice with respect to contemplated or existing litigation." Lewis v. Casey, 518 U.S. 343, 348 (1996). The Court takes judicial notice that plaintiff

states in his pleading, and the Court's docket shows that his amended complaint in Davis v. Webb was mailed by plaintiff and filed by this Court [4:11CV1907, Doc. #14] prior to the allegations discussed by plaintiff in the instant action. Loss of "official capacity" claims from an amended complaint filed prior to confiscation of the stamps at issue in this case cannot show "actual prejudice" to a pending legal claim. In other words, plaintiff made a pleading error prior to the confiscation of the stamps having occurred. As to whether or not plaintiff was able to research and refute any of his pleading errors in his complaint, the Court looks to the docket for answers. In fact, review of the docket sheet for plaintiff's case shows that plaintiff was able to defeat a motion to dismiss after his stamps were allegedly confiscated, and importantly, he was able to file a third amended complaint wherein he named defendants in both their individual and official capacities. [4:12CV1906 JAR, Doc. #75] . As such, plaintiff has not properly alleged an access-to-courts claim in this case, as he suffered no prejudice from the alleged confiscation of his stamps to a pending legal claim.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $38.02 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the amended complaint because the amended complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 9th day of July, 2013.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE